## GIB GAY v. THE STATE.

### No. 2222. Decided January 30, 1901.

**1. Murder—Corpus Delicti—Proof of.**

On a trial for murder, it is essential that the corpus delicti be proved, that is, first, the deceased must be shown to have been killed and, second, that the killing was criminally caused by the act of the defendant. It includes the identity of the victim and the identity of the party causing the death.

**2. Homicide—Identification of Body of Deceased—Charge.**

It is provided by article 654, Penal Code, that "no person shall be convicted of any grade of homicide unless the body of the deceased, or portions of it, are found and sufficiently identified to establish the fact of the death of the person charged to have been killed." Held, the proof of identity of the body or the remains must be established by evidence outside the proof of the death of deceased; that is, the portions of the body, or remains, must themselves be sufficiently identified to establish the death of the person charged to have been killed; and the jury should in effect be instructed that in identifying the remains, they should look only to such testimony as pointed pertinently towards such identification, and not to consider the disappearance of deceased as proof that the remains found were his.

**3. Same—Circumstantial Evidence.**

Under our statute, Penal Code, article 654, a conviction for murder can not be had, no matter how clear the proof of the death of deceased may be, if no remains or portions of his body are found. If the death is proved, the remains or portions of the body found may be identified by circumstantial evidence, such as the clothing, papers, articles of value, etc., known to belong to deceased and found with the remains or portions of the body.

**4. Murder—Evidence Insufficient.**

See opinion for evidence stated, which is held insufficient to support a conviction of murder, inasmuch as it fails to establish the corpus delicti of the crime beyond a reasonable doubt.

APPEAL from the District Court of Travis, on a change of venue from Hays County. Tried below before Hon. R. E. BROOKS.

Appeal from a conviction of murder in the first degree; penalty, imprisonment for life in the penitentiary.

This is the second appeal in this case. See Gay v. State, 40 Texas Crim. Rep., 242.

The essential facts in evidence are fully stated in the opinion, and no further statement is required.

*T. H. Franklin* and *Will G. Barber,* for appellant.—The court erred in refusing to charge the jury as follows, as requested by the defendant: "In this case before you can convict the defendant you must find from the evidence beyond a reasonable doubt that H. C. Lindemann is dead, and that defendant killed him; and also that portions of the body of said Lindemann have been found and sufficiently identified to establish the fact of the death of said Lindeman. And although you should believe that said Lindemann is dead, still you should not find a verdict of guilty unless you further find from the evidence beyond such reasonable doubt that portions of the body of said Lindemann have been found and sufficiently identified to establish the fact of the death of said Lindemann."

The court erred in refusing to charge the jury as follows, at the request of defendant: "In order to convict the defendant in this case it is absolutely essential that the alleged remains produced before you should be identified by the evidence beyond a reasonable doubt as portions of the body of H. C. Lindemann; and should you believe from the evidence that said Lindemann is dead, and that the defendant killed him, yet before you can convict defendant you must be satisfied and find from the evidence beyond a reasonable doubt that the alleged remains are portions of the body of H. C. Lindemann and no other person; if you can not so find from the evidence, you will acquit the defendant."

The court erred in refusing to charge the jury as follows, at the request of the defendant: "In order to convict any person of any homicide, it is necessary under the law to prove that the person charged to have been killed is in fact dead. The law of the State of Texas requires that this fact of death must be shown by proving or identify-

ing· the dead body of the alleged deceased.   The alleged remains may be identified by direct or circumstantial evidence, if sufficiently strong, but evidence of facts or circumstances which only tends to prove that H. C. Lindemann is dead, and which have no relevant bearing towards the identification of the alleged remains as those of Lindemann can not be used by you for the purpose of so identifying the said remains.   In other words, the alleged remains can not be identified as required by law by evidence which tends only to show Lindeman's death, but the fact of death must· be proved to you by evidence which satisfactorily identifies the alleged remains."

The court erred in charging the jury as follows:   "The alleged remains, however, may be identified by direct or circumstantial evidence, if sufficiently strong, and the same shall be sufficient to identify the remains beyond a reasonable doubt as portions of the body of H. C. Lindemann, and to thereby establish the fact of the death of said Lindemann," for this:

1.   As all of the evidence in the case is circumstantial this charge is on weight of the evidence.

2.   Under this charge the jury was authorized to consider all of the circumstantial evidence in the case whether the same related directly or pertinently to the identification of the remains or not.

3.   Under said charge the jury was authorized. to consider the evidence of the alleged disappearance of H. C. Lindemann, and the statement of defendant with reference thereto, and with reference to his possession of the cattle bought by him and Lindemann and to the possession of some of Lindemann's personal effects, as circumstantial evidence to identify the alleged remains, and thus in effect find the identification of said remains from the fact of said disappearance and said statements.

4.   Under said charge the jury was authorized to find the fact of death of said Lindemann from evidence not identifying the remains, ʼand thus to find the identification from the fact of death, instead of being required to find death from the identification.

5.   Said charge qualified the statutory rule with reference to the identification of the alleged remains of a  person alleged to have been killed, and permits the jury to find the fact of identification in a manner and from evidence not authorized by said statute.

6.   That said charge was calculated to confuse the jury and to mislead them as to the meaning of said statute.

The court erred in refusing to charge the jury as follows, as requested by defendant:   "The evidence in this case is insufficient to authorize a conviction, and you will therefore find a verdict of not guilty."

The court erred in refusing to charge the jury as follows, as requested by defendant:   "The evidence in this case is legally insufficient to identify the pieces of bone, hair, buttons, concerning which the witnesses have testified, as portions of the body of H. C. Lindemann sufficiently· to establish the fact of the death of H. C. Lindemann, and

you will therefore, in your consideration of this case, disregard the evidence with reference to said articles in determining whether said Lindemann is dead or not."

The verdict of the jury is contrary to the law and the evidence in this:

The evidence in this case does not establish the corpus delicti, nor is it sufficient to identify the alleged remains produced in court as part of Lindemann, and thereby prove the death of said Lindemann, and the death of Lindemann is not proved in the manner required by law, if proven at all. The evidence does not show that Lindemann, if dead, was killed by defendant. The evidence is insufficient to overthrow the presumption that Lindemann is not dead.

[NOTE.—These assignments present together the contention of defendant as to the proper construction of article 654, Penal Code, and also his contention that the evidence in this case fails to meet the requirements of that article. Being so intimately connected, we treat them together under the following propositions:]

First Proposition.—The evidence must identify the alleged remains with sufficient certainty to prove the fact that Lindemann is dead; and this fact of death must be established alone by the evidence, direct or circumstantial, which has relevant and material efficacy for purpose of identifying the remains, and not by the aid of facts which might have a tendency to prove only that Lindemann was dead or that defendant killed him, without touching the question of identification lying back of it all. Penal Code, art. 654; Puryear v. State, 28 Texas Crim. App., 74; State v. Davidson, 30 Vt., 377, 73 Am. Dec., 312.

Second Proposition.—Admitting that circumstantial evidence may be used to identify the alleged remains and the consequent fact of the death of the person charged to have been killed, the circumstances relied upon must be so "cogent," "irresistible" and "intense" as to prove same conclusively, and the evidence in this case falls far short of doing so. 3 Greenl. on Ev., secs. 30, 121, 132, 133; 3 What. & S., Med. Jur., sec. 782; Best on Ev., secs. 440, 445; 1 Bish. Crim. Proc., secs. 1056, 1059; Stark. on Ev., 862; Whart. on Ev., secs. 325, 804; Smith v. Commonwealth (Va.), 21 Gratt., 809; State v. Keeler, 28 Ia., 552; State v. Davidson, supra; State v. German, 54 Mo., 526; Ruloff v. People, 18 N. Y., 179; People v. Videtto, 1 Park. Crim. Rep. (N. Y.), 609; Reg. v. Hopkins, 8 C. and P., 591; 34 Eng. Com. Law Rep., 540; Walker v. State, 14 Texas Crim. App., 609; Puryear v. State, 28 Texas Crim. App., 73; Harris v. State, 28 Texas Crim. App., 308; Jackson v. State, 29 Texas Crim. App., 458; Conde v. State, 35 Texas Crim. Rep., 98; Kugadt v. State, 38 Texas Crim. Rep., 681; Pitts v. State, 43 Miss., 472; Hunter v. State, 34 Texas Crim. Rep., 599; Anderson v. State, 34 Texas Crim. Rep., 546; Lightfoot v. State, 20 Texas Crim. App., —; Wilson v. State, 41 Texas, 320; Lovelady v. State, 14 Texas Crim. App., 545; Ah Hang v. State, 18 Texas Crim. App., —· People v. Palmer, 109 N. Y., 113.

*Rob't A. John,* Assistant Attorney-General, for the State.   [No brief for the State found with the record.—Reporter.]

HENDERSON, JUDGE.—This is the second appeal in this case, appellant having heretofore been convicted in the District Court of Hays County, and prosecuted an appeal to this court, the judgment having been reversed at the Austin term, 1899.   40 Texas Crim. Rep., 242. Since that trial the venue has been changed to Travis County.   On the trial appellant was convicted of murder in the first degree, and his punishment assessed at imprisonment in the penitentiary for life, and he prosecutes this appeal.

- The testimony on this trial was substantially the same as on the former appeal, except in some respects the State failed to make as strong a case as it did before.   The essential features of the case, as made by the State, in effect showed that Lindemann (the alleged deceased) and appellant became acquainted in Arizona, the home of Lindemann, and where appellant was temporarily living, engaged as a hired hand in the cattle business.   Some time towards the last of June, 1897, appellant induced Lindemann to leave Arizona, and go with him to Hays County, where appellant's mother lived, for the purpose of engaging in the cattle business.   They made a contract to purchase cattle together, Lindemann furnishing the money, something over $2000, and the cattle were bought and placed in the pasture of appellant's mother, in Hays County, who lived some fifteen miles from Buda or Kyle, the nearest point on the railroad.   The cattle were to be bought in the country, and placed in the pasture and kept, and when sold the profits were to be divided between Lindemann and appellant.   About the last of June some $2100 was deposited by Lindemann and some $150 by appellant in the bank at Kyle.   During July they bought about 100 head of cattle, and placed them in said pasture.   On the 25th of July, Lindemann drew the balance of his money, some $527.34, from the bank, and at the same time appellant drew $150 from said bank.   This was on Wednesday.   They left Kyle together in a gig, and the last seen of Lindemann was on his way home with appellant, about 2 o'clock of that Wednesday evening.   On Lindemann's disappearance, it is shown Gay claimed Lindemann's property, consisting of the cattle purchased, stating he had bought Lindemann's interest in the same.   The State also introduced testimony tending to show that appellant had but very little money before the disappearance of Lindemann, and that he afterwards not only claimed to have bought the cattle from Lindeman, but that he had money to loan.   The testimony tended to show he loaned some $400 or $500 to parties in that vicinity.   The State also showed by testimony that appellant stated he carried Lindemann to Buda Friday evening; that he and Lindemann stayed all night near Buda, in the woods, Friday night, and that Lindemann left him there, stating he would go up to the station and take the train; that he did not know where Lindemann was going, unless he was going down to Smithville or Red Rock, in Bastrop County, where they had bought

cattle. Suspicion was aroused shortly after Lindemann's disappearance, and appellant was arrested by the sheriff of Hays County, and placed in jail. The grand jury which met in September failed to indict him, and he was released. In the early part of October following, search was made on the premises and pasture of appellant's mother, and in the woods, about half a mile from Mrs. Gay's house, in a rather secluded spot, evidences were found where there had been a fire, and about a bushel and a half of ashes were found in a space seven feet long and four feet broad, and the undergrowth was found to have been singed and burned immediately around the place. The ashes were taken and sifted, and about a tin cup of bones, and buttons, brads, and a tuft of hair were found. These bones were identified by experts as those belonging to a human being. One of the bones was stated to be the great toe; another, one of the phalanges of the toe or hand of a human being; another, part of the hyoid bone at the root of the tongue of a human being. The tuft of hair consisted of about fifty strands of hair of a light color. The buttons were described as pants buttons. All the witnesses state they can not tell whether the bones were of a white man, Mexican, negro, or Indian. One witness (a dentist), however, stated the five teeth found indicate they were the teeth of a human being, and too large for a woman's teeth. Defendant introduced very little testimony, relying on the weakness of the State's case to prove the corpus delicti. In addition, it is shown by him that the hair found at the fire in the woods was light hair; that not a strand of gray hair was found among the fifty or seventy strands of hair; that Lindemann had gray hair intermingled with his hair. Appellant also introduced testimony tending to show he carried Lindemann to Buda to take the train, as he had stated to the sheriff.

Appellant assigns a number of errors, involving the admission and rejection of certain testimony, and also questioning the charge of the court; but, in the view we take of the case, it is only necessary to discuss one question, to wit, the corpus delicti.

With reference to the charge of the court, appellant urges it was not explicit enough, in that it left the jury to identify the remains by evidence concerning the death of the party, or at least, to use evidence concerning the disappearance of Lindemann in order to identify the portion of remains found as his. On this behalf he says that the charges requested by him should have been given, particularly the seventh special charge, to the effect "that the alleged remains may be identified by direct or circumstantial evidence, if sufficiently strong; but evidence of facts or circumstances which only tend to prove that H. C. Lindemann is dead, and which have no relevant bearing towards the identification of the alleged remains as those of Lindemann, can not be used by you for the purpose of so identifying the said remains." In other words, the alleged remains can not be identified, as required by law, by evidence which tends only to show Lindemann's death, but the fact of death must be established to your satisfaction by evidence which identifies the alleged remains. While, strictly speaking, the corpus

delicti—that is, the body of the offense—includes the production of a dead body, and proof that death was caused, not by natural causes, but by violence, and excludes accident or suicide, yet it has generally been held by the authorities to also include the identity of the victim and the identity of the party causing the death. As was said by our court, Judge Wilson delivering the opinion, in Lovelady v. State, 14 Texas Criminal Appeals, 560: "The corpus delicti consists of two things: (1) the criminal act; and (2) the defendant's agency in the commission of such act." Mr. Wharton says: "It has already been stated that the corpus delicti includes two things: First, the objective, and then the subjective, elements of criminality. In other words—First, that the overt act took place; secondly, that it took place through criminal agency. Of homicide, therefore, it must be held essential to conviction—First, that the deceased should be shown to have been killed; and, second, that the killing should have been proven to have been criminally caused; and on the well known principle that in capital cases this criminal agency of the defendant can not be proved on his confession alone without proof of corpus delicti, it must not only be shown, to justify the conviction in such case, that the deceased was dead, but that his death was criminally produced." Whart. Crim. Ev., sec. 325. Generally speaking, the criminal agency of defendant in producing the death is so involved as that testimony on both issues is admitted at the same time. But undoubtedly there may be cases where the court should insist that the evidence of corpus delicti should first be established before any proof of criminal agency is admitted. And there may be cases (and this, to our minds, looks like one of them) where, after the admission of testimony concerning the disappearance of the party under circumstances suggesting his death, the court should guard the jury against considering these circumstances as evidence identifying the remains found as those of the alleged murdered man. While it is true, as a general proposition, that the corpus delicti may be proved by circumstantial evidence, yet under our statute, which was evidently borrowed from the civil law, or Code of Napoleon (see article 654, Penal Code), "no person shall be convicted of any grade of homicide, unless the body of the deceased or portions of it are found and sufficiently identified to establish the fact of the death of the person charged to have been killed." And this proof of identity, it has been held, must be established by evidence outside of the death of such party; that is, the statute itself provides the mode of proof, and the remains of the deceased, or portions of them, must be sufficiently identified to establish the death of the person charged to have been killed, and it can be done by no other fact or circumstance than those named in the statute. See Walker v. State, 14 Texas Crim. App., 609; Puryear v. State, 28 Texas Crim. App., 73; State v. Davidson, 30 Vt., 377, 73 Am. Dec., 312. The nearest the court came to giving a charge on this subject was as follows: "The alleged remains, however, may be identified by direct or circumstantial evidence, if sufficiently strong; yet the same shall be sufficient to identify the remains beyond a reasonable doubt as portions

of the body of H. C. Lindemann, and to thereby establish the fact of the death of the said Lindemann." But this was not, in effect, instructing the jury, in identifying the remains, to look only to such testimony as pointed pertinently towards such identification, and not to consider the evidence of the disappearance of Lindemann as any proof that the remains found were his. We think that some such charge as that requested on this subject should have been given.

The important question, however, is, does the evidence as exhibited in the record sufficiently establish the corpus delicti? Our statute provides, as we have seen, that the corpus delicti is never established, no matter what the proof as regards the death of the deceased may be, unless the remains of such deceased, or portions thereof, are found and sufficiently identified to establish the death of the person alleged to be killed. This would exclude any conviction of a defendant, no matter how clear the proof of death might be, if no remains are found. This may be unfortunate, and in special cases may work to the detriment of the public in the administration of the law; yet, as we understand our statute, so it is written, and by it we must be governed. As stated before, however, if death is shown, and remains, or portions thereof, are found, but in such a state of decomposition as to escape identification, yet circumstantial evidence is not excluded, but may be resorted to in order to identify the remains, such as clothing known to have been worn by deceased at the time of his disappearance; papers and articles of value, etc., found on the person of the deceased. These and other facts may be resorted to in order to identify the body as that of the alleged deceased.

The question we are here considering may be divided into two propositions: (1) Does the evidence establish the death of Lindemann by violence? (2) Does the evidence establish that the remains, or portions thereof found, are identified as those of Lindemann? If neither of these propositions is found to be true, then it is not necessary to consider the criminal agency of appellant. Now, does the evidence establish beyond a reasonable doubt that Lindemann is dead? No witness testifies to his death, much less to any violence used upon him by anyone. All that we know is he was last seen alive and well, so far as the record discloses, on Wednesday, the 25th of July, 1897, and he has not been seen in that part of the country since that date. According to the defendant, and this is supported by some other evidence, he took him to the train, and he left, not stating where he was going. He had formerly lived in Arizona, and, for aught that appears, he may have gone there or elsewhere. The record is silent as to that matter, and, the disappearance being recent, we are not even at liberty to indulge the presumption of death after seven years of absence, as at common law. Beyond this, we have the evidence of appellant's claim to his property. But this itself is not inconsistent with Lindemann still being alive, and certainly is not plenary proof of his death. We believe the most that can be said is that the testimony excites suspicions to the effect that appellant may have killed Lindemann; but no one would claim that this character

of evidence lifts the question of his death beyond the realm of a reasonable doubt.

If the first proposition had been proven, then our task in answering the second proposition would be rendered easier. At least we would start out with a death proven, in order to look for and find the remains of that dead person, which, when found, we must identify in accordance with the provisions of our statute. Now, all that we have on this subject is some burned cloth and leather, some brads, and some buttons that belonged to overalls of some person, and some bones and teeth and hair which may be considered to have once belonged to a human being. As to the articles that may have belonged to the clothing of a human being—as to the buttons, the brads, and the burned cloth and leather—the most that can be said is that these articles may have suited the same character of articles worn by Lindemann; but the proof, however, is that the cloth and leather were in such condition as to be of no practical use as evidence, save to suggest that cloth and leather of some description may have been burned there. And the same may be said of the brads. As to the buttons, the evidence is suggestive that they were different from those on the pants sold by Helman to Lindemann. All of these articles were worn indiscriminately on clothing sold in that community. As to the bones, all that can be said of them is that they were human bones. No witness told how old they were, and no distinctive mark was found upon any one of them indicating in any sense that they were the bones of Lindemann. We do not have here the dentist identifying the teeth as those of Lindemann, as was done in Webster's case. As to the hair, one witness for the State stated that the hair of Lindemann was light, and the tuft of hair found looked to him to be the same color as Lindemann's On this point it was shown there was not a gray hair in the tuft produced, while the proof was uncontroverted that Lindemann had gray hairs, and these were evenly scattered and distributed over his head. So that, as to the hair, the testimony not only fails to indicate that it might have been Lindemann's hair, but establishes the fact that it was not his hair. For aught that appears, these may have been old bones and apparel placed there by some one for a purpose, as is suggested by some of the testimony. In this connection, we are struck with the paucity of the remains found and the conditions surrounding the fire. If a human body, as is assumed, was burned there some three or four weeks before the discovery of these articles, then we would expect to find more articles of a similar character, more bones, and more particles of clothing worn, such as shoe nails, buckles, etc.,—bones more incapable of destruction by fire than were found. We would expect to find more indications of a very heated fire at the place of the cremation. So far as the evidence discloses, there was nothing remarkable as to this; no evidence of a very hot fire, and the amount of ashes comparatively small. The theory of the remains found here accords more with the hypothesis that some one was anxious to procure a reward for the conviction of the

alleged slayer of Lindemann, and procured these bones and bits of clothing somewhere, and cremated them here, than that they are the remains of Lindemann. At any rate, in our opinion, the evidence falls far short of that degree of certainty required in order to establish that the remains there found were those of Lindemann. In this connection, our attention has been called to Walker v. State, 14 Texas Criminal Appeals, 609. In that case the court held that the proof was insufficient, and the circumstances of identification are far less cogent in this case than in that. It may be that Lindemann is dead; that he came to his death by violence. It may be conceded that this is probable, but, as we understand it, our law requires a greater degree of proof than this. It may be that the remains, or the portions found at the crematory in the woods, are a portion of the remains of Lindemann. The probability of this may be conceded. But still it is not established, as we understand it, in accordance with out statute and under the rule of evidence. It may be that the circumstances point to appellant with suspicion as the guilty participant in the death charged, but no man can be convicted of a grave crime upon mere suspicion. The facts stated must be proved beyond a reasonable doubt, and where the case is of a circumstantial character, as in the present instance, the facts and circumstances must not only be consistent with his guilt, but inconsistent with any other reasonable hypothesis or conclusion, and producing a reasonable and moral certainty that Lindemann is dead, that defendant unlawfully killed him, and that the alleged remains produced at the trial were portions of the body of H. C. Lindemann, and, unless all of the elements of the offense were proven in accordance with the rule regulating circumstantial evidence, it was the duty of the jury to render a verdict of not guilty. This they failed to do, but, as we gather from the testimony, it was their duty to have done so, and on the evidence before us the trial court should have granted a new trial. Because, in our opinion, the court below erred in refusing appellant a new trial on account of the insufficiency of the evidence to sustain the verdict of the jury, the judgment is reversed and the cause remanded.

*Reversed and remanded.*