JOSEPH LEROY HIGNETT V. STATE

No. 31,965. June 15, 1960

Motion for Rehearing Overruled December 14, 1960

DAVIDSON, Judge, dissented.

*Leland D. Sutton,* Abilene, for appellant.

*Leon Douglas,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

The offense is assault with intent to murder with malice; the punishment, 15 years.

A prior trial resulted in a conviction with punishment assessed at 10 years. Such conviction was reversed because the state called appellant's wife as a witness against him. Hignett v. State, (168 Tex. Cr. Rep. 380) 328 S.W. 2d 300.

The indictment alleged that the assault was made upon Barbara Lynn Hignett.

The evidence shows that Barbara Lynn was the three months old baby daughter of appellant.

Dr. Willis J. Bray, an Abilene physician, whose qualifications were stipulated, testified that he examined Barbara Lynn in the Emergency Room at Hendrick Memorial Hospital about three o'clock in the morning of January 9, 1959, and found multiple bruises over the right side of her forehead, face and chest, and and over the left thigh and above both ankles; found the femur or thigh bone fractured in the middle; found "marked swelling of both legs, below the knees, such that the skin was absolutely strutted just as tight as it would go"; found actual bone separation or fractures of the legs below the knees, particularly the left; found fracture of the bone of the upper left arm; found fractures of at least four ribs on the right and some minute irregularities at the distal end of the thigh bones.

Dr. Bray judged from the appearance of the injuries that they were a day or two old, and testified that injuries of such nature could have caused death, there always being "a certain amount of bleeding of vessels internally in case of a fracture and the general rule, the more displaced the fracture is the more hemorrhage and soft tissue injury there is associated with the fracture."

The doctor testified that the child was in traction six weeks.

On cross-examination Dr. Bray explained there are two ways to cause death. "One is by injury to a vital spot; a brain injury; an injury to the chest that will interfere with the breathing; an injury to an internal organ; heart; something of that kind.

"Then, there are those injuries that are multiple, less than

vital but of such an extent that they would cause enough loss of blood in the tissues to cause death."

Later in the trial Dr. Bray testified that it would have taken a hard blow to have caused the injuries he found on the baby. He also testified that if a person was not prevented by some means from carrying out his intent to kill a small child it would be an easy thing to do.

City Detective F. S. Isbell testified that he talked to appellant at the hospital about the baby's injuries and appellant said she fell off of a chair, but that later, after he was arrested and taken to the police station, appellant made a statement which was reduced to writing and was introduced in evidence.

The statement contains appellant's confession that in the afternoon while he was alone with the baby he put his finger down her throat when she burped or vomited; that he slapped her on the face, on the arms, legs and butt; also "I just hit her and hit her a lot of times."

Appellant did not testify, but called his wife as a witness. She testified that except for a small bruise on her head, she first noticed bruises on the child shortly before she took her to the hospital, though she bathed and dressed her and had seen her almost constantly during that day and the day before.

It was the wife's testimony that the baby was pulled off the bed by a three year old boy who "was trying to love her" the morning before she was taken to the hospital that night.

On cross-examination appellant's wife was permitted to testify over objection that she told the district attorney that appellant told her not to tell people what really happened but to say that the child fell off a chair. Also over objection the wife was asked and answered:

"Mr. Caffey: Did he tell you that he had lost his head and beat this child? A. He didn't use it in exact that kind of words.

"Q. What did he say? A. Well, knowing that him and I were the only ones that were around the child that day, other than over at Mary's, he said that he guessed that he had done it and that he was sorry, but that's all he told me."

It is contended that the evidence is insufficient to establish the corpus delicti or to prove an intent to kill or to prove malice.

We recognize the rule that the confession of the accused alone is not sufficient proof that a crime has been committed. Ellison v. State, 59 Tex. Cr. R. 3, 127 S.W. 542. However, the confession may be used in connection with other facts to establish the corpus delicti. Watson v. State, 154 Tex. Cr. R. 438, 227 S.W. 2d 559, and cases cited including Kugadt v. State, 38 Tex. Cr. R. 681, 44 S.W. 989; Whitaker v. State, 160 Tex. Cr. R. 271, 268 S.W. 2d 172.

As we understand the evidence, the facts warranted a finding that the child's injuries were caused either by falling on the floor after being pulled off a bed by a neighbor child, on the morning of January 9, or resulted from an assault upon the baby by appellant when he was left alone with her on January 7, as shown by his confession.

Aided by the confession and the nature and extent of the injuries and by appellant's false explanation, we conclude that the evidence is sufficient to sustain the finding by the jury that the baby's injuries resulted from an unlawful assault by appellant.

In view of the tender age of the child, the nature and extent of her injuries, and the statement and confession of appellant, we also find the evidence sufficient to sustain the jury's finding that appellant committed the assault with malice and with intent to kill.

It would be difficult to envision a set of facts showing an adequate cause for such an assault by a sane man upon a three months old baby or showing a purpose of the person wilfully inflicting such injuries by an assault other than to take the life of the baby.

Reversible error is claimed in the cross-examination of appellant's wife. She having testified in effect that the child's injuries resulted from a fall from a bed and not from an assault by appellant two days before, the state was properly allowed to cross-examine her as to appellant's attempt to have her give a false explanation as to how such injuries were caused. Roberts v. State, 74 Tex. Cr. R. 150, 168 S.W. 100.

Bill of Exception No. 4 complains of the following remarks in the opening argument of the district attorney: " * * * and

carrying that thing in mind for twenty-four hours, which is a continuing action against the child. To beat it unmercifully; to break its bones and sever its bones and bruise its head and bruise its body and then be quiet about what happened for twenty-four hours. Specific intent to kill; to destroy. You couldn't take a little animal; a tender little animal of any kind there and put it on that table or on a bed and beat it like that without intending to kill it.

"Of course, he could have taken a knife and killed the baby easy. He could have taken a gun and killed the baby easy, but you know this pressure with the hand; this beating or this drowning or this smothering * * * ."

The objections to such remarks were levelled at the reference to "drowning" and "smothering."

The trial judge instructed the jury not to consider the remarks about "drowning" but overruled appellant's motion that a mistrial be declared.

On the hearing of appellant's motion for new trial it was shown that newspapers in the county had given considerable publicity to the recent arrest of a couple for investigation into the death of their two-year-old-daughter and the plea of guilty of another mother to the murder by drowning of her 19 months old son, resulting in a 5-year-sentence.

It is argued that publicity given these cases, together with the jury's verdict assessing the maximum punishment of 15 years, whereas at the previous trial a 10 year term was assessed, show that the complained of remarks were so prejudicial as to require that a mistrial should have been ordered.

The record of the prior trial was before us. Appellant testified at that trial. The issue of insanity was raised and submitted to the jury. He did not testify at the second trial and offered no evidence which would excuse or mitigate the assault, if he made it, and the issue of insanity was not submitted or requested to be submitted.

As we understand the record, counsel for the state was arguing that though it was easy to kill an infant, appellant used means which would make it difficult to prove murder or an intent to murder.

We overrule the contention that the trial judge should have ordered a mistrial because of the complained of remarks.

Complaint is made that the trial judge declined the request that he charge the jury upon circumstantial evidence. In view of appellant's confession, such charge was not necessary. See cases cited under Art. 658 V.A.C.C.P., Note 142.

Other claims for reversal have been considered and are overruled.

The judgment is affirmed.

### ON SECOND MOTION FOR REHEARING

MORRISON, Presiding Judge.

Our opinion on motion for rehearing is withdrawn, and the following substituted in lieu thereof:

The question has been raised concerning the failure of the state to disprove certain claimed exculpatory portions of the confession. This is a jury question, not a matter of law, and is to be determined under appropriate instructions from the court. In the case at bar, the court properly submitted the question to the jury in his charge and instructed them to acquit unless the State had disproved such exculpatory statement.

One jury heard appellant's plea of insanity and rejected it. The cause was reversed on a procedural error, and on the second trial the plea of insanity was not interposed.

This court is powerless to hold as a matter of law that appellant was insane.

Remaining convinced that we properly disposed of this cause originally, appellant's motion for rehearing is overruled.

Davidson, Judge, (dissenting).

I am of the opinion that the facts are insufficient to authorize the conviction and therefore dissent.