John LAVAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 34882.

Court of Criminal Appeals of Texas.

Nov. 7, 1962.

Rehearing Denied Jan. 9, 1963.

C. C. Divine, Houston, for appellant.

Frank Briscoe, Dist. Atty., Samuel H. Robertson, Jr., and Wallace C. Moore, Asst. Dist. Attys., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

DICE, Commissioner.

The offense is murder; the punishment, death.

The deceased, Mrs. Cecelia Atkins, a 54-year-old widow, operated a small grocery store in the city of Houston and lived alone in the residence portion of the store build-

ing. John E. Heffernan, an elderly gentleman who had retired from city employment, was a close personal friend of the deceased and assisted her in the operation of the store. It was his daily custom to go to the store each morning around 6:30 o'clock and help the deceased open the business and to then assist her in closing the store at night around 7:30 o'clock. It was his custom also, after closing the store each evening, to remain and visit with the deceased for some time and watch television.

On the Saturday night of March 11, 1961, Heffernan left the premises around 9:30 o'clock, at which time he turned on the outside lights and heard the deceased lock the door behind him. The following morning when he returned around 7:15 o'clock, he observed the outside lights still burning and the door unlocked. Upon entering the house he found the deceased, in a nightgown and covered with a spread, lying dead on the floor of one of the bedrooms.

The investigation which ensued revealed many items missing from the store, including a box of King Edward cigars, a box of Lord Clinton cigars, a bottle of homemade wine, a bottle of port wine, a flashlight, a box of .22 caliber cartridges, and the money which the deceased kept in small purses inside a large purse under her mattress. Also missing were certain items belonging to Mr. Heffernan, including some shirts and trousers, a denim jacket and a ten-year and thirty-year service pin from the city of Houston. The gas refrigerator was not operating and the smell of gas was in the house. A further investigation revealed that underneath the house someone had cut the gas line and had bored three sets of holes through the floor.

An autopsy performed upon the deceased's body revealed that she had been shot four times with a .22 caliber weapon, three of the shots being the cause of her death. Dr. Joseph Jachimczyk, the pathologist who performed the autopsy, expressed the opinion that the time of death of the deceased was between the hours of one and three o'clock on the morning of March 12, 1961.

On March 20, 1961, the appellant was arrested for a traffic violation, at which time it was discovered that his car bore license plates registered for another automobile and that he was in possession of an operator's license belonging to some other person. A search of his automobile revealed numerous cartons and mixed packages of cigarettes and candies, some cans of sardines, a King Edward cigar box, a Lord Clinton cigar box, a box of .22 shells, a flashlight and a blackjack, a bottle of homemade wine, a bottle of port wine, a .22 caliber Colt automatic pistol, a brace and bit, some sash cord, a pair of pipe cutters, and several articles of clothing. Five small purses were found hidden in the air vents under the hood of the automobile. Inside one of the purses was a poll tax receipt and some other receipts issued to Mrs. Cecelia Atkins.

It was shown that the price marks on the cans of sardines were identical with the price marks on identical cans of sardines in the store of the deceased; that the .22 shells, the flashlight, the two bottles of wine, and some of the clothing came from the store of the deceased; that the bit recovered was the same size used in boring the holes in the floor of the residence of the deceased; that the pipe cutter was identical to the pipe cutter that cut the gas pipe under the deceased's house; and that the sash cord was identical to a piece found in the room where the deceased was lying. Two of the three bullets from the deceased's body were shown by ballistics tests to have been fired from the .22 Colt automatic pistol found in appellant's automobile, the third bullet being too mutilated to make a positive identification.

On March 21, 1961, appellant, after being duly warned, made and signed a written confession to Officer J. D. Belcher of the Houston police department. In the statement, which was introduced in evidence by

the state, appellant stated that he had watched the store of the deceased on Friday and Saturday nights; that he started the job on Friday night by crawling under the house and partially cutting the gas pipe and partially drilling the holes through the floor so that he could attach a rubber hose to the open gas pipe and put it through the floor to cause the deceased to lapse into unconsciousness. He related that after he ascertained he could not complete the job he left and returned the next night; that after the deceased was asleep he finished cutting the pipe and placed the rubber hose on the pipe and through the floor; that one of the deceased's bedroom windows was open and the gas was not taking effect as he had planned, so he unlocked a screen with a piece of wire and entered the house; that after entering he shook the bed, the deceased awakened, and he shot her "three or four times." He further related that the deceased then wrestled with him and got his pistol away from him, at which time he hit her several times about the head and she fell on the floor. He stated that he covered her with a sheet, went back under the house and disconnected the gas hose and then searched the house and took the money. He related that he then placed many items in a "tow sack" and, before leaving, ate a portion of an apple pie which was in the icebox.

The appellant, testifying in his own behalf, denied committing the offense and testified that he was at his home all night on the occasion in question. He denied that he voluntarily executed the written statement and stated that the only reason for signing it, if he did, was because of physical abuse at the hands of the police officers. Appellant admitted the presence of all the articles found in his automobile but stated that he had found them in a vacant area adjacent to some railroad tracks, and had placed them in his car.

The appellant's mother and his aunt corroborated his defense of alibi.

Officer Belcher and the other officers present when the confession was made denied any physical abuse to appellant. Allen Pengelly, a newspaper reporter for the Houston Post who witnessed the confession and was present while the statement was being taken, denied that appellant was threatened or abused in any way. Assistant District Attorney Joe Guarino, the other witness to the confession, testified that appellant, on the occasion of making the statement, was not threatened or abused in any way.

The court submitted to the jury in his charge, under appropriate instructions, the issue as to the voluntary nature of appellant's written confession, as well as his defense of alibi.

Appellant predicates his appeal upon five points of error. He first contends that because of a previous trial of the cause that resulted in a hung jury and a mistrial, he had been placed in jeopardy, and that such was a bar to his prosecution and conviction in the instant trial.

■ The contention is not properly before us for review, as appellant did not file and present to the court a written plea of former jeopardy, sworn to as required by law. Arts. 508 and 509, Vernon's Ann.C.C.P.; Fowler v. State, 135 Tex.Cr.R. 399, 120 S.W.2d 1054, and Morrison v. State, Tex.Cr.App., 339 S.W.2d 529.

■ We have, however, in view of the penalty assessed, reviewed the evidence adduced in connection with appellant's oral plea of jeopardy and find that at the previous trial the jury was discharged by the court after it had deliberated for approximately twenty-five hours and reported to the court that it was hopelessly deadlocked ten to two. Under such record, no abuse of judicial discretion is shown on the part of the trial court in discharging the jury and declaring a mistrial.

■ Appellant next contends that the court erred in refusing to declare a mistrial after he (appellant) was asked on cross-examination if it were not a fact

that he had been in the penitentiary serving eighty years for assault to murder, robbery by assault, and fourteen cases of burglary. The record reflects that after the mistrial was refused, appellant *withdrew his objection to the inquiry* and subsequently made proof of the convictions inquired about. Clearly, no error is shown.

■ It is next contended that the court erred in refusing appellant's motion for mistrial when on cross-examination he was asked: "That is where you hocked the pistol out of the burglary?" The record reflects that appellant objected after the witness stated: "That is where I hocked what?" The jury was instructed by the court to disregard the reference to some other burglary. While the question was improper, under the record it was not so harmful that the court's instruction could not fully protect the appellant. No details were given of any other burglary. Appellant, by his own proof, had shown that he had been convicted for certain burglaries. No question is presented concerning the good faith of the prosecutor.

■ The contention is further made that the court erred in refusing to grant a mistrial when, on cross-examination of the state's witness Joe Guarino with reference to what may have transpired at the time appellant made his confession, which the witness did not observe, he (Guarino) answered:

"* * * Mr. Divine, this is the 625th murder case that I probably have handled. I am there quite often. I have messed up many things in my life. I just don't know. I can't answer your question."

That portion of the witness's answer with reference to the number of murder cases he had handled was unresponsive to the question propounded and the record reflects that the court instructed the jury to disregard such answer. The witness's answer was not of such import that its effect, if any, upon the minds of the jury could not be removed by the court's instruction.

Appellant, by his fourth contention, insists that the evidence is insufficient to support the conviction because his confession was not corroborated by other evidence.

■ While it is the rule that a confession, alone, is not sufficient proof that a crime has been committed, it may be used in connection with other facts to establish the corpus delicti. See: Hignett v. State, Tex.Cr.App., 341 S.W.2d 166, and cases there cited.

■ The facts heretofore set forth in this opinion are clearly sufficient to corroborate appellant's written confession in detail and to establish the corpus delicti. See cases cited in Smith v. State, Tex.Cr.App., 361 S.W.2d 390. The contention is overruled.

■ Appellant's last complaint relates to the court's charge. The record contains no objections to the charge. Attached to appellant's brief is the affidavit of his attorney that he did make certain objections and exceptions to the charge. We are not authorized to consider the attached affidavit which attempts to set up matters not shown in the record. Brundrett v. State, Tex.Cr.App., 354 S.W.2d 395. Under the record, appellant's complaints to the charge are not properly before us for review. We have examined the charge given by the court and find no fundamental error therein.

The judgment is affirmed.

Opinion approved by the Court.