Michael Lloyd SELF, Appellant,

v.

The STATE of Texas, Appellee.

No. 48622.

Court of Criminal Appeals of Texas.

Sept. 18, 1974.

Rehearing Denied Oct. 9, 1974.

**834**

Thomas M. Roberson, Houston, for appellant.

Carol S. Vance, Dist. Atty., Clyde. F. DeWitt, III, George M. Karam, Asst. Dist. Attys., Houston, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

DALLY, Commissioner.

The appellant was convicted for the murder of Sharon Shaw; he was sentenced to imprisonment for life. He presents eight grounds of error. In two grounds he urges that the evidence is insufficient to sustain his conviction; in five grounds he urges that reversal of the judgment is required because evidence was erroneously admitted; in one ground he urges that the jury was erroneously instructed.

The appellant contends that the judgment is not supported by sufficient evidence because the State failed to establish the corpus delicti in that it did not show what caused the death of Sharon Shaw. Some cases have held that the corpus delicti in a murder prosecution consists of three elements: (1) the body of the deceased must have been found and identified; (2) the death of the deceased must be shown to have been caused by the criminal act of another; and (3) the accused must be shown to have been the guilty agent connected with the criminal act. See, e. g., Black v. State, 137 Tex.Cr.R. 173, 128 S. W.2d 406 (1939); Bell v. State, 149 Tex. Cr.R. 509, 196 S.W.2d 923 (1946); Smith v. Texas, 329 F.2d 498 (5th Cir. 1964). This definition of the corpus delicti is ob-

viously too broad because it includes all of the elements necessary to prove the guilt of a defendant and to sustain a conviction. The inclusion of all three elements has been criticized by Wigmore. See 7 Wigmore, Evidence, § 2072 at 401 (3d ed. 1940). Although Wigmore would limit the corpus delicti to only the proof of the death of the alleged deceased, and some courts have followed this rule, most courts have held and this Court has generally held that the corpus delicti consists of two elements.

The first element of the corpus delicti in a prosecution for murder is that the body or the remains of the body of the deceased be found and identified. See Article 1204, Vernon's Ann.P.C.; Gay v. State, 42 Tex.Cr.R. 450, 60 S.W. 771 (1901); O'Keefe v. State, 145 Tex.Cr.R. 349, 167 S.W.2d 1035 (1942); 7 Wigmore, Evidence, § 2072 at 401 (3d ed. 1940). The appellant does not seriously contend that the remains of the body of Sharon Shaw were not found and identified. Dr. Paul G. Stimpson, a dental college professor, who specialized in forensic dentistry and odontology, identified a skull which had been found in the bayou as that of Sharon Shaw. His opinion was based upon a comparison of that skull and its teeth with the records, X-ray photographs, and an orthodontic cast of Sharon Shaw made by her dentist and her orthodontist. Dr. Giles Sheldon Green, a pathologist, who had examined the skeletal remains found in the bayou, was able to identify the bones as those of two girls and to estimate with reasonable exactness the ages of the girls. Also, a crucifix that was identified as that of Sharon Shaw by her mother was found by officers in the bayou on a necklace wrapped around a jawbone. Since there was positive identification of the remains of the body of Sharon Shaw, the first element of the corpus delicti was established.

The second element of the corpus delicti in a prosecution for murder is that the death of the deceased was caused by the

criminal act of another. Smith v. State, 137 Tex.Cr.R. 634, 132 S.W.2d 264 (1939); O'Keefe v. State, supra.

■ Proof of the corpus delicti may not be made by an extrajudicial confession alone, but proof of the corpus delicti need not be made independent of an extrajudicial confession. If there is some evidence corroborating the confession, the confession may be used to aid in the establishment of the corpus delicti. See Kugadt v. State, 38 Tex.Cr.R. 681, 44 S.W. 989 (1898); Watson v. State, 154 Tex.Cr.R. 438, 227 S.W.2d 559 (1950); Whitaker v. State, 160 Tex.Cr.R. 271, 268 S.W.2d 172 (1954); Bosquez v. State, 166 Tex.Cr.R. 147, 311 S.W.2d 855 (1958); Lavan v. State, 363 S.W.2d 139 (Tex.Cr.App.1962); Brown v. State, 376 S.W.2d 577 (Tex.Cr. App.1964); Fields v. State, 468 S.W.2d 71 (Tex.Cr.App.1971); Gutierrez v. State, 502 S.W.2d 746 (Tex.Cr.App.1973).

The extrajudicial written confession of the appellant reads in part as follows:

" . . .

"The day of August 4th, 1971, I was driving around at *approximate* 9:00 P.M. and I had had several nerve pills and 8 to 10 bottles of beer in my system. After I saw Renee Johnson walking on El Camino Real, south toward *Nasa* I, I was going north on El Camino Real and I turned around and came back and picked her up. I asked her what she was doing when she got into the car and she said nothing at the time. I asked her what she wanted to do and she mentioned going over the *Nasa* Bay Yacht Club. I told her I would drop her off there. We went to the Yacht Club and she asked me to wait. She came back a few minutes later with Sharon Shaw. We then drove around the Clear Lake. The two girls had previously had something to drink. I had two joints of marijuana in the car, but neither girl smoked it. I also had 5 beers with me. We drank them and they began to feel good and getting loud. We drove thru El

Largo and that vicinity. Renee was sitting next to me and Sharon was sitting on the passenger's side of the car. Sharon was hanging out the window jumping up and down *holloring* at everybody and shooting peace signs at them. Renee was jumping up and down next to me playing with the radio and getting on my nerves. I asked them both to be *quite*. They *quitened* down some but not a whole lot. I had stopped along the side of the road and had gotten them *quitened* down, by telling them that I was going to whip them or make them walk if they did not quieten down. The later it got the more it got on my nerves. Neither one of the girls wanted to go home, they wanted drive around some more. We parked at Camp Red Bluff and went down by the lake. I tried to get into Renee's pants, by feeling around on her and tried to get her hot and did not *suceed*. Sharon was throwing rocks in the lake. We all got into the car and drove to Red Bluff and Old Kirby Road, where there were some trees at the corner of the intersection and a small dirt road. I pulled into the dirt road and went as far as I could go. I tried getting fresh again with Renee and Sharon was out of the car. We fought in the front seat because I wanted it, but she would not let me have it. I wasn't thinking straight and I reached into the back seat on the floorboard, and grabbed a coke bottle, she crawled out on the passenger side and I slid out on the passenger side too, I began swinging and hit Sharon in the *necksomewhere*, I hit her again and she fell, I do not know if she was *unconscience* or not. Her nose was bleeding. Renee started running towards Kirby Rd. She was looking back *hollowing* don't hit me, don't hit me. When I caught her, I brought her back to the car and hit her in the butt, made her get back into the car and hit her again in the left shoulder. She didn't move and I left her there on the front seat. I knocked her out at this point. I got out of the car and opened the back seat and

put Sharon in the back seat laying down, her nose was still bleeding and it was getting on her arm. I then shut the door and walked around the car and got *intothe* front seat of the car and left. I then got on Red Bluff and *drive* towards the Bay Area, turned right on Bay Area down to Big Three Welding and Chemical Plant, and turned right on a dead end street, went to the dead end backed the car up heading the car back towards the Bay Area and stopped. The two girls were still not moving, I got out walked around the car and opened the passenger side door and grabbed Renee about the waist and pulled her out. After I got her out of the car I stripped off her clothes and dropped her on the ground, threw her clothes in the front seat, and got Sharon out of the back seat, by the legs and arms, and after I got her out of the car I stripped her clothes off except her panties, and put them in the front seat. Neither one of the girls was moving, I panicked and shoved them into the Bayou. I put old grass and tree limbs over the top of the bodies. I shut the passenger door. I got into the car and drove back to the Bay Area and got back on Red Bluff and drove very slow throwing out the clothes in the ditch on the right and left side of the road, by swinging my car back and forth on the road. I then drove to Kemah to a *U-Tot-Em*, and went inside and bought a coke and cigarettes and talked to the man working in *thestore* and left and went home at around 12:30 or 1 a. m. and watched T.V. and fell asleep on the couch.

"   .   .   .

In addition to the written confession introduced in evidence, an oral statement which the appellant made to Deputy Sheriff Frank Beamer while Beamer was conducting an investigation was introduced in evidence without objection. Beamer testified that on June 23, 1972, he and Deputy Sheriff W. A. Turner interviewed the appellant at the Harris County jail. The appellant agreed to show the Deputies various locations in the Clear Lake and Nassau Bay area where he had been on the night of August 4, 1971, and to tell them what he had done that night. The testimony of Beamer, in which he related what the appellant told the officers and where he took them, may be summarized as follows: The appellant took them first to the Sizzler Steak House where he said he picked up Rhonda Renee Johnson. The appellant then directed them to drive to the Nassau Bay Yacht Club. The appellant said that at this club Rhonda Renee Johnson left his car and came back with Sharon Shaw. Appellant told Beamer that with both girls in the car he drove to a Jack-In-The-Box restaurant where they drank cokes and ate hamburgers. The trio then drove around for quite some time in the El Largo subdivision, then to the Timber Cove addition, and finally they stopped at the side of Old Red Bluff Road. Near this spot the appellant told Beamer that he struck both girls with a coke bottle. He put the bodies of the girls in the car and drove to a grassy area near Choate Road where he undressed the girls and put their clothes back in the car. Appellant showed Beamer where he carried the bodies across the guardrail and threw them into the water near a culvert; this was the place where the remains of their bodies had been found.

Courts have had difficulty in deciding the quantum of evidence necessary to corroborate a confession. See Note, Proof of the Corpus Delicti Aliunde the Defendant's Confession, 103 U. of Pa.L.Rev. 638 (1955); Annot. 45 A.L.R.2d 1316 (1956); 7 Wigmore, Evidence, § 2070 (3d ed. 1940); Kugadt v. State, supra; Daeche v. United States, 250 F. 566 (2nd Cir. 1919), opinion by Judge Learned Hand; State v. Lucas, 30 N.J. 37, 152 A.2d 50 (1959). A traditional distrust for the reliability of extrajudicial confessions has caused most jurisdictions to require their corroboration. This earlier distrust may now be dissipating because of the greater reliability that may be attributed to confessions as a result of

the application of recent decisions such as Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L. Ed.2d 908 (1964).

■ The indictment in this case alleged that the appellant caused the death of Sharon Shaw by drowning her, by beating and striking her with hands and fists, and by beating and striking her in some manner unknown to the grand jury. Since no soft tissue remained and no evidence of trauma was found, Dr. Green testified that after he examined the skull and skeletal remains he was unable to ascertain the exact cause of the death of Sharon Shaw. However, there is evidence in the record which corroborates the appellant's confession, and when all the evidence is considered, it is established that Sharon Shaw's death was caused by criminal means. Appellant confessed that he hit Sharon Shaw with a coke bottle, that she did not move afterwards, and that he shoved her body into a bayou. Dr. Green testified that after his examination of the remains it was not incompatible with any of his findings to say that her death was caused by drowning, by a concussion, or by injuries inflicted by hands and fists. He further stated that in his opinion the bones had been in the water for a minimum of three to five months, which corroborated appellant's statement that he placed Sharon Shaw's body in the bayou. Moreover, appellant confessed that he placed the bodies of both Sharon Shaw and Rhonda Renee Johnson in the bayou. His confession is corroborated by the positive identification of the remains of both girls, which were found in the same place. The disappearance and death of two apparently healthy girls at the same time makes it more probable that their deaths were caused by criminal means than by suicide, accident, or natural means. Additional corroborating evidence of appellant's confession that he placed the bodies in the bayou were photographic exhibits admitted as evidence which show that one of the skulls was found partially submerged in

water. Although the evidence independent of the extrajudicial written confession and oral statement was not sufficient by itself to prove the cause of death, by considering the independent evidence together with the appellant's statements we have concluded that the evidence was sufficient to prove the death of Sharon Shaw was caused by the criminal act of another, and the second element of the corpus delicti was established.

We hold that the State established the corpus delicti in this case. The State having established the corpus delicti could prove the appellant's guilt as the agent guilty of the commission of the crime by his confession unaided by other evidence. See, e. g., Gutierrez v. State, supra; Brookins v. State, 499 S.W.2d 320 (Tex. Cr.App.1973); Bayless v. State, 492 S.W. 2d 588 (Tex.Cr.App.1973); Thomas v. State, 458 S.W.2d 817 (Tex.Cr.App.1970). The remaining element of proof essential to the State's case that the appellant was the guilty agent in causing the deceased's death was proved by the appellant's extrajudicial written confession and his oral admissions to Beamer. All cases heretofore holding that the corpus delicti in a murder prosecution consists of three elements are hereby overruled to the extent they are in conflict with this opinion.

We will next consider the ground of error concerned with the appellant's confession. The only contention made is that the written confession was inadmissible because it was made out of the presence of the appellant's attorney who had already been appointed by the court. After he had been advised by officers of his constitutional rights, on June 9, 1972, the morning of his arrest, the appellant made a written confession. Later that day the appellant was fully advised of his constitutional rights by a Harris County District Judge, and at that time the judge also appointed an attorney to represent the appellant. Before the officers took the appellant from the courtroom, the attorney appointed by that judge counseled the appellant in the

jury room which adjoined the courtroom. On June 12, 1972, officers interviewed the appellant and he made another written confession in the absence of his court-appointed attorney. In compliance with Article 38.22, Vernon's Ann.C.C.P. and the requirements of Jackson v. Denno, supra, the trial court, after an extensive hearing in the absence of the jury, made complete findings of fact that both written confessions were freely and voluntarily made by the appellant. These findings are supported by the evidence in the record.

The first confession was not offered in evidence; the second confession, from which we have already quoted, was offered and admitted in evidence. The confession relates that the appellant waived the presence of his counsel. While testifying, the appellant admitted that he gave the confession of his own free will and volition. There is no claim made that the appellant requested that his court-appointed attorney be present when he gave the officers the confession that was introduced. Although appointed counsel testified that the officers, when the confession was made, "understood" they were not to interrogate the appellant in his absence, he did not testify that he informed them before the statement was made not to interrogate the appellant in his absence. The officer testified he was not told by appointed counsel prior to taking the statement not to interrogate the appellant in his absence. In his brief appellant cites no authority for the contention made in this ground of error.

■ Even though the accused was already represented by appointed counsel, we held in Gunter v. State, 421 S.W.2d 657 (Tex.Cr.App.1967) the accused may waive counsel's presence and consent to being questioned in his absence. See also Nash v. State, 477 S.W.2d 557 (Tex.Cr.App. 1972); Hill v. State, 429 S.W.2d 481 (Tex.Cr.App.1968); Caraway v. State, 489 S.W.2d 106 (Tex.Cr.App.1971); Elliott v. State, 444 S.W.2d 914 (Tex.Cr.App.1969). We hold that the appellant's confession was properly admitted in evidence.

■ The appellant protests that the court erred both in admitting in evidence an X-ray photograph of the teeth of Rhonda Renee Johnson and in admitting in evidence the testimony of Dr. Edith Meeks, who was Rhonda's dentist. Another skull was found in the bayou close to that of Sharon Shaw. Dr. Meeks identified X-ray photographs that she had made of the teeth of Rhonda Renee Johnson. Dr. Stimpson compared the X-ray photograph with the skull and identified the skull as that of Rhonda Renee Johnson. Both girls, who were friends, had disappeared at the same time. This evidence, of which complaint is made concerning Rhonda Renee Johnson, was blended and closely interwoven with the evidence admitted to show the death of Sharon Shaw and was therefore admissible. See, e. g., Washington v. State, 496 S.W. 2d 77 (Tex.Cr.App.1973); Joshlin v. State, 488 S.W.2d 773 (Tex.Cr.App.1972). This corroborative evidence tended to confirm as true the written and oral statements of the appellant and was also of probative value in showing that Sharon Shaw met her death by criminal means.

■ The appellant declares in one ground of error that "The Trial Court committed reversible error in overruling Appellant's Motion for Mistrial made subsequent to the State's inquiring into matters previously excluded by Appellant's Motion in Limine." In argument under this ground of error the appellant complains not only that the prosecutor should not have asked a "have you heard" question while cross-examining a witness who testified to the appellant's good reputation, but he also complains that both the improper form of the question and the prosecutor's bad faith require reversal. Prior to the hearing at the punishment phase of the trial the appellant's counsel moved for the court to instruct the prosecutor not to inquire into nor allude to an investigation of the appellant for the alleged possession of marihuana, since the investigation did not lead either to his being charged with or conviction for possession of marihuana.

The appellant seems to forget that there is evidence in the record that at the time Sharon Shaw and Rhonda Renee Johnson were riding in his automobile with him he had in his possession two marihuana cigarettes. It was proper for the State to test the witness's knowledge of the appellant's good reputation for being a peaceful, law abiding citizen by asking questions evidencing conduct inconsistent with that reputation. See Jones v. State, 484 S.W.2d 745 (Tex.Cr.App.1972); Webber v. State, 472 S.W.2d 136 (Tex.Cr.App.1971). Contrary to the appellant's argument, the question "Have you heard that he committed the offense of possession of narcotics in Harris County?" was asked in a proper form. Since there was evidence already in the record concerning the appellant's possession of marihuana, it cannot be said the question was asked in bad faith. As for the appellant's complaint that the prosecutor violated the court's order, we observe that the court's order was qualified so that it did not prevent the State from asking the question which was asked. Moreover, the trial court instructed the jury to disregard the question and instructed the prosecutor not to ask such questions. The appellant's complaints in this ground of error are without merit.

 We overrule the appellant's contention that the court erroneously admitted in evidence photographs which showed the skulls of the two girls in the water of the bayou where they were found. See Martin v. State, 475 S.W.2d 265 (Tex.Cr.App. 1972); Knoppa v. State, 505 S.W.2d 802 (Tex.Cr.App.1974).

The appellant declares that there is no evidence in the record to support a conviction based on a finding that the death of the deceased was caused by two of the alleged means of death. Therefore, he says, the court erroneously instructed the jury that it could base its verdict on a finding that the appellant killed Sharon Shaw by any one of the means of death alleged. The objection to the court's charge upon which the appellant relies, made at the time of trial, was that the charge to the jury denied the "defendant effective assistance of counsel under the Sixth Amendment of the United States Constitution for the reason [that the charge did] not put the defendant on notice with that of which he [was] to defend himself." The trial objection is substantially different from that now urged on appeal, and the trial court did not have an opportunity to rule on the objection to the charge that is now made. In the absence of a timely written objection to the court's charge complaining that the charge authorized conviction on theories not supported by the evidence, this ground of error presents nothing for review. See Article 36.14, V.A.C.C.P. and Siros v. State, 399 S.W.2d 547 (Tex.Cr.App.1966).

The judgment is affirmed.

Opinion approved by the Court.