## George Grimes v. The State.

No. 1295.   Decided November 29, 1911.

**1.—Assault to Rape—Continuance.**

Where the cause is reversed upon other grounds, it is not necessary to pass on the application for continuance.

**2.—Same—Evidence—Motive.**

Upon trial of assault to rape, there was no error to admit in evidence what was said and done by the defendant to the prosecutrix in the afternoon before the evening of the assault, with reference to the defendant's motive in making opportunity to commit the assault. However, the fact that the defendant whipped the prosecutrix on another occasion was not admissible.

**3.—Same—Evidence—Appearance of Prosecutrix.**

Upon trial of assault to rape, there was no error in admitting testimony as to the appearance of prosecutrix two days after the alleged assault; that her lips were blue and that she had bruised spots on her throat, etc. However, the witness' conclusions as to finger prints should have been excluded. Following Pefferling v. State, 40 Texas, 492.

**4.—Same—Evidence—Cross-Examination.**

Upon trial of assault to rape, there was no error in permitting the State to show by defendant's witness on cross-examination that he had not testified at a former trial; no question being asked as to the result of such trial.

**5.—Same—Evidence—Rebuttal.**

Where the mother of prosecutrix had testified that prosecuting witness had never told her about the assault, there was no error in permitting the prosecutrix to testify that she did tell her.

**6.—Same—Evidence—Declarations of Defendant.**

Upon trial of assault to rape, there was no error in permitting a State's witness to testify that defendant had come to him and told him that if witness had testified like defendant wanted him to that he would have been $25 better off.

**7.—Same—Charge of Court—Force.**

Where, upon trial of assault to rape, the court had charged on the question of force, there was no error in refusing special charges thereon.

**8.—Same—Evidence—Other Acts of Intercourse.**

Upon trial of assault to rape, on a female over the age of consent, it was improper for State's counsel to repeat the question whether defendant ever made any similar assaults on prosecutrix prior to the one charged in the indictment, the court having sustained objections thereto.

**9.—Same—Argument of Counsel—Requested Charges.**

Upon trial for assault to rape, it was reversible error, in the absence of testimony, for State's counsel to impugn defendant's reputation, and state that defendant had tried to debauch other girls and that for this reason they had left home, etc., and this although no instructions were asked to withdraw such argument.

Appeal from the Criminal District Court of Dallas. Tried below before the Hon. Robt. B. Seay.

Appeal from a conviction of assault with intent to rape; penalty, fifteen years imprisonment in the penitentiary.

The opinion states the case.

*Walker & Williams* and *Pierson, O'Donnell & Pierson,* for appellant.—Upon question of admitting in evidence, the appearance of prosecutrix, two days after the assault: Caveness v. State, 74 S. W. Rep., 908; Stanley v. State, 73 S. W. Rep., 400; Navarro v. State, 24 Texas Crim. App., 378; Terry v. State, 72 S. W. Rep., 382; Thompson v. State, 30 Texas Crim. App., 325; Conde v. State, 33 Texas Crim. App., 10.

Upon question of allusion to former trial: Clark v. State, 23 Texas Crim. App., 260.

Upon question of other assaults of rape: Barnett v. State, 44 Texas Crim. Rep., 592; Smith v. State, 44 Texas Crim. Rep., 137; Hackney v. State, 74 S. W. 554; Hennard v. State, 46 Texas Crim. Rep., 90; Simpson v. State, 46 Texas Crim. Rep., 551; Wiggins v. State, 84 S. W. Rep., 821.

Upon question of improper argument of counsel: Robbins v. State, 47 Texas Crim. Rep., 312; Bryson v. State, 20 Texas Crim. App., 566; Gazley v. State, 17 Texas Crim. App., 267; Thompson v. State, 33 Texas Crim. Rep., 472; Smith v. State, 44 Texas Crim. Rep., 137; Nalley v. State, 28 Texas Crim. App., 387; Smith v. State, 55 Texas Crim. Rep., 563; Davis v. State, 54 Texas Crim. Rep., 236; Taylor v. State, 50 Texas Crim. Rep., 560; McKinley v. State, 52 Texas Crim. Rep., 182.

*C. E. Lane,* Assistant Attorney-General, for the State.—Upon question of appearance of prosecutrix: Lawson v. State, 17 Texas Crim. App., 292; Caudle v. State, 34 Texas Crim. Rep., 26; Veal v. State, 8 Texas Crim. App., 474; McGee v. State, 21 Texas Crim. App., 670; Holst v. State, 23 Texas Crim. App., 1; Reddick v. State, 35 Texas Crim. Rep., 462.

HARPER, JUDGE.—Appellant was indicted, charged with the of-

fense of assault to rape upon his stepdaughter, on or about August 9, 1909; when tried, he was convicted and his punishment assessed at fifteen years in the penitentiary.

Appellant complains of the action of the court in overruling his application for a continuance. In view of the disposition we will make of this case, it is not necessary to pass on this question.

The prosecuting witness, Bessie Smith, testified: "Up until the time I went to Grand Prairie, I lived with my stepfather, George Grimes, and my mother. I was living with them on the 5th of August, 1909. I left there on the 5th of August, about eight o'clock, after dark. I went to Mrs. Haddock's and stayed all night. After I left Mrs. Haddock's, I went to Mrs. Morris' house and stayed a night and two days. On the 5th day of August, 1909, George Grimes wanted me to go to the bottom with him. He was going to send my mother and little brother, Everett, to Grand Prairie, and make me go to the bottom with him. He sent them to Grand Prairie for some groceries. I got ready to go with them, and told him I was going, and he told me that I would not go, that I had to go to the bottom with him, and I says, 'No, I am not going,' and he says, 'I will show you whether you will go or not.' He sent my brother after a check line, and whipped me to the house. After he got the strap and whipped me to the house, he says, 'By God, I will show you whether you will stay with me; you go change your clothes,' and I commenced crying. My mother was right there when he did this, and then they hitched the team up and went off. After my mother left, I went in my room and sat down, and he came in and asked me to let him sit behind me, and I told him that I wouldn't do it, and I got up and jumped out of the door, and he said, 'Come in, Bess. I am not going to do anything to you. Come in. If you will just let me do what I want to, it won't take me but a few minutes,' and I said I wouldn't do it, and he jumped out of the door and caught me, and I jerked loose from him and was out in the yard crying, and he went in the house. He kept talking to me. He says, 'Won't you come in and let me do it?' and I said I would not, and he said, 'I will do what I want to do, or I will have my neck broke,' and I says, 'I am not coming in there,' and he did not say much then and let me alone for a few minutes, and then directly he commenced again wanting me to come in the house. He said, 'Just come in. I won't hurt you;' he said, 'If I hurt you, holler, and I will turn you loose,' but I would not do it. After my mother and brother came back, he sent my brother to my other brother's, and sent my mother out to the barn to feed the mules. My mother came back, and he said to her, 'You go back out there and stay until I tell you to come in the house,' and after she went out again, he commenced after me to come in the house. He says, 'Bess, you had better come in the house and let me do what I want to do,' and I told him that I wouldn't, and he says, 'I will do it if it breaks my neck,' and he grabbed me by the arms and took me behind the door

and pulled my dress up. When he got me behind the door, he hit me in the mouth and choked me. He said to me, 'If you don't shut up somebody will come in here and take me out,' and I told him I wanted loose, and he tried to turn me round, and I wouldn't do it. He had his person out and put it up against me, behind me. He would try to turn me around, and every time he would get me around I would jerk loose, and he would just keep on trying. He never did get me turned around good. After I got loose from him, I ran out to the barn where my mother was, and told her about it. I told my mother about it in the presence of my sister, Willie Smith. This occurred about seven o'clock at night. George Grimes struck me three or four times in the mouth, and choked me, when he had me behind the door. He also hit me on the shoulders and on the arms. When he hit me in the mouth, it made a big black place there."

Various objections were urged to this testimony, especially that portion of same which relates to what was said and took place in the afternoon at the time her mother and brother started to Grand Prairie. We think it was all admissible, except that portion wherein she says he whipped her with a rope, in view of the fact that the witness states appellant began the attempt to have sexual intercourse with her immediately after her mother and brother left, and which conduct, she says, culminated in the attempt forcibly to do so at seven o'clock that evening. His objecting to her going to Grand Prairie would furnish an opportunity for him to accomplish his purpose, and while admitting in evidence, the statement that he whipped her to make her stay at home, might, perhaps, have a tendency to prejudice the jury against him, yet, in view of the fact that the court limited in his charge, this testimony, and the jury were instructed he could not be convicted for whipping her that evening, and his acts and conduct could only be considered in passing on his motive and intent in keeping her at home, if he made a subsequent assault as alleged, no such error is presented as would necessitate a reversal. The facts are so entwined with each other as to render the entire transaction admissible in evidence, except that part relating to the whipping in the afternoon, which should not be submitted on another trial.

Appellant, in a proper bill, complains that the prosecuting witness' sister, Ettie Smith, was permitted to testify that when she saw the prosecuting witness, "her lips were blue; I could see places on her neck and the prints of fingers, bruised spots on her throat and a bruised place on her lip," claiming that it was two full days after the alleged occurrence before this sister saw the witness, and was too remote. In prosecutions for rape it has always been held that the statements of the witness are not admissible as original testimony, unless so connected with the offense as to become a part of the res gestae, but a different rule has always prevailed in regard to the appearance of a witness, her condition and the condition of her clothing, and this is held to be admissible in evidence. This is not hearsay, nor does one

depend on the knowledge of another, but is simply stating as facts what he sees and knows. The case of Pefferling v. State, 40 Texas, 492, makes this distinction clear and has always been regarded as a leading case in announcing the true rule. This rule has always been followed in this State, so far as we have been able to ascertain in cases of rape or assault with intent to commit rape. This also applies to the testimony of Ettie Smith and the other witnesses who testify to the condition of prosecuting witness and the bruises on her person. None of her statements to those witnesses were admissible, nor did the court admit them. The court, as shown by the bill, also excluded that portion of the statement wherein the witness stated "and prints of fingers," this being a conclusion of witness as to what caused the bruises on the neck.

There was no error in permitting the State to prove by the witness, Threadgill, that he had not testified at a former trial. This was a witness for the defendant, and was permissible in cross-examination. It is not every question in regard to a former trial that is inadmissible, but no question must be asked in regard to a result of a former trial. It becomes necessary at times to refer to a former trial, and unless the question is so framed and answer given as results in injury to defendant, it presents no error.

Neither was there error in permitting the prosecuting witness to state that she told her mother, the first time she saw her after leaving the house, about the occurrence in the presence of Mrs. Ollie Smith. Her mother had stated that prosecuting witness had never told her anything about it, and was used as a witness by defendant to prove this fact, and it was permissible for the witness to state in rebuttal she had done so.

Nor was it error to permit a witness to state that defendant had come to him and stated, "if you had testified like I wanted you to do at the trial, you would have been $25 better off." This was an indirect way of offering the witness a bribe if he would so testify in future.

The court did not err in refusing to give defendant's special charges Nos. 2 and 3, inasmuch as these charges were covered in the main charge, and in special charge No. 1, given at defendant's request, which sufficiently presented the question of "force," as applied to this character of offense.

In a proper bill, it is shown that the county attorney asked the prosecuting witness, "Miss Bessie, state whether or not George Grimes ever made any similar assaults on you prior to August 5, 1909," which question was objected to by the defendant and which objection was sustained by the court. The bill further shows that on the next day, when this witness was again on the stand, the county attorney stated to the court that he was going to again ask the question that the court had ruled was not admissible, when defendant objected to him being permitted to ask the question, but the court permitted the county

attorney to again ask the question, whether or not appellant ever made a similar assault on her prior to this time, and when the question was asked, the court again sustained the objection. Such practice should not be indulged in. It was improper to repeat the question, after the court had ruled thereon, and while we perhaps would not reverse the case for this alone, yet, as the case must be tried again, we hope it will not be permitted to occur on another trial. This is not a case in which previous offenses would be admissible in evidence, it is a rape by force on a person, or assault with intent to rape on a person more than fifteen years of age, and the testimony is not such as would render admissible, prior attempts, if there had been such, and this way of making the defendant twice object to the same question can but have the effect of creating the impression on the minds of the jury that there had been prior attempts.

By bills of exceptions, it is shown that the county attorney, in his closing argument, said: "Why was it they left home? It is because they slaved for him, and because he tried to debauch them; that is the reason of it. Her sisters would not put up with it. Do you blame them for not living with him and not speaking to him?" Again he said: "They have objected because I have referred to him as a brute. I say today that he is a brute of the vilest kind." Again he said: "We have character witnesses here by the dozen and they know it. They did not dare to put his character in issue. Did they attack the character of these girls? No. They did not dare do it. If they had put his character in issue, we would have shown you how these girls were treated; how they had to slave for him and were never allowed to go to school." Proper bills of exceptions were reserved, but no special charges in regard thereto were requested, and the question is, were such remarks of such character as to work a reversal of this case when no special charges were requested? There was no evidence in the record that defendant had debauched the prosecuting witness' sisters, and had it been offered, it would not have been admissible in this case, and yet the prosecuting officer is telling the jury that the other girls had left home because defendant had attempted to debauch them. Again, the defendant did not testify in this case and had not put his reputation in issue. He had a right to do so, if he so desired, but the State has no right to attack his reputation or put it in issue if he does not do so. And while the testimony of the character witnesses was not admissible, the county attorney tells the jury he has a dozen of them in attendance on court and if the defendant had dared to put his character in issue he would have proven by them how these girls were treated, how they had slaved and never permitted to go to school. Also that he could, if permitted, have proven the girls had a good reputation. The rules of law are made to govern the State as well as the defendant, and when it says testimony is inadmissible, prosecuting officers can not make witnesses of themselves and state what they could have proved, and using such testimony as a basis, to build

denunciatory and unauthorized argument thereon. We are of the opinion, as the county attorney, in his closing argument, testified that this defendant had tried to debauch the other girls, and for this reason they had left home; had testified as to defendant's reputation, which was not an issue in the case, and that it was bad, and how he mistreated the girls, and had also stated that the girls' reputation, whom he stated defendant had attempted to debauch, was good, that this case should be reversed for such improper conduct. We always regret to reverse a case because of improper argument, yet, when prosecuting officers, in their zeal and earnestness, so far step outside the bounds of the law, and use language that is denunciatory, and argue facts so detrimental, which have no basis in the testimony, they must learn that verdicts thus won come too dear, and this court will not permit such conduct. Trials are expensive, and take up time of the trial court, and the time of this court, and we trust that all prosecuting officers, in their argument, will confine themselves to the evidence and proper deductions therefrom.

In this case there was no basis in the testimony for such remarks; no excuse for them, and they are of so hurtful and inflammatory character, that this cause is reversed and remanded for another trial.

*Reversed and remanded.*