TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-97-00358-CR







Lincoln John Belle, Jr., Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT


NO. 46,930, HONORABLE OLIVER KELLEY, JUDGE PRESIDING








 Appellant, Lincoln John Belle, Jr., appeals from his conviction for the offense of aggravated
assault with a deadly weapon. See Tex. Penal Code Ann. § 22.02(a)(1) (West 1994). The jury assessed
appellant's punishment at imprisonment for seven years and a fine of $10,000. Five issues are presented
for review. Appellant asserts that his conviction in this trial resulted in double jeopardy. He also contends
that he was denied a fair trial because of: (1) the improper admission of evidence of an extraneous offense,
(2) the prosecutor's misconduct, (3) the prosecutor's improper jury argument, and (4) the prosecutor's
improper reference to appellant's prior trial. We will affirm the trial court's judgment.

 In his first point of error, appellant claims that this trial resulted in double jeopardy, because
he had been previously prosecuted on the same indictment; and when that jury was unable to reach a
verdict, the trial court erroneously, prematurely discharged the jury. By a pretrial habeas corpus
proceeding, a defendant may present a Fifth Amendment claim of double jeopardy and have the trial
court's adverse ruling reviewed on appeal prior to trial. See Apolinar v. State, 820 S.W.2d 792, 794
(Tex. Crim. App. 1991); Ex parte Robinson, 641 S.W.2d 552, 555 (Tex. Crim. App. 1982); State v.
Lara, 924 S.W.2d 198, 201 (Tex. App.--Corpus Christi 1996, no pet.). However, instead of relying on
a habeas corpus proceeding, appellant relied upon the statutory special plea procedure to urge his former
jeopardy contention.

 A defendant may specially plead that he has been previously prosecuted for the same
offense and that the former prosecution was improperly terminated. See Tex. Code Crim. Proc. Ann. art.
27.05(3) (West 1989). The special plea must be verified by the affidavit of the defendant. See id. art.
27.06; Lavan v. State, 363 S.W.2d 139, 141 (Tex. Crim. App. 1963); Morrison v. State, 339 S.W.2d
529, 532 (Tex. Crim. App. 1960); Lara, 924 S.W.2d at 201. All issues of fact presented by the special
plea shall be tried by the trier of the facts on the trial on its merits. See id. art. 27.07. 

 In raising the issue of former jeopardy, "[I]t has been held that where a trial is had on an
indictment charging the same transaction, no plea of former jeopardy or former conviction is necessary
where it is the same court and before the same judge." Ex parte Jewel, 535 S.W.2d 362, 365 (Tex.
Crim. App. 1976); see Ex parte Scelles, 511 S.W.2d 300, 301 (Tex. Crim. App. 1974). Appellant's
first trial was in the 27th District Court before the Honorable Joe Carroll. This trial was in the 264th District
Court before the Honorable Oliver Kelly. Therefore, it was necessary for appellant to fully comply with
the statutory requirements of the special plea procedure.

 The State points out that appellant did not properly preserve for appellate review the issue
he presents in this point of error, because appellant's special plea of former jeopardy was not verified by
affidavit and appellant did not present any evidence in support of his former jeopardy plea. Although
appellant filed and signed a written pleading, the jurat merely recites that it was: "Subscribed and sworn
to before me on the 21 day of May 1997 by Lincoln John Belle, Jr." followed by the notary public's
signature and seal. Nowhere in the pleading did appellant state that the facts related were true. Therefore,
the pleading was not "verified by affidavit of the defendant" as required by statute. See Tex. Code Crim.
Proc. Ann. art. 27.06 (West 1989). A pleading is not verified by affidavit even when a notary public
certifies that the person signing the pleading stated to the notary public that the matters set out therein were
true and correct. See State v. LeBlanc, Inc., 399 S.W.2d 919, 922 (Tex. Civ. App.--Houston 1966,
no writ). "It is essential that one making an affidavit swear or affirm under oath that the facts stated are
true." Id.

 Furthermore, before the jury's verdict was returned, appellant did not offer any evidence
in support of his special plea of former jeopardy. A special plea, though properly sworn to, constitutes only
a pleading and does not establish as true the issues of fact alleged therein. See State v. Groves, 837
S.W.2d 103, 106 (Tex. Crim. App. 1992); Anderson v. State, 635 S.W.2d 722, 725 (Tex. Crim. App.
1982); Ray v. State, 198 S.W.2d 906 (Tex. Crim. App. 1947). On a plea of former jeopardy, the burden
of proof is on the defendant by a preponderance of the evidence. See Shaffer v. State, 477 S.W.2d 873,
875 (Tex. Crim. App. 1971); Berrios-Torres v. State, 802 S.W.2d 91, 95 (Tex. App.--Austin 1990,
no pet.).

 On a motion for new trial, appellant filed the reporter's record of the first trial, but this was
too late to preserve for appellate review the error claimed. Because appellant's plea of former jeopardy
was not verified by his affidavit, and because he presented no evidence in support of his plea, the error
claimed in appellant's first point of error was not preserved for appellate review and it is overruled.

 The "second issue presented" by appellant is "whether the appellant was denied a fair trial
by the trial court allowing the prosecutor to elicit testimony concerning an extraneous offense that occurred
shortly after the offense on trial." Appellant admits that "the events objected to . . . may have occurred in
a time frame close enough to the primary offense or the arrest to qualify as 'res gestae'." Even so, appellant
argues that the evidence of the extraneous offense was not admissible, because the State failed to "prove
beyond a reasonable doubt that the accused committed the extraneous offense." 

 Ferdinand Camacho, the victim of the charged offense, lived on Blake Street in a house
next to a fenced, used car lot. About midnight, Camacho heard a noise, opened the door, and saw a man,
whom he identified at trial as appellant, close by within the fenced lot. Appellant had in his hand a pistol
that Camacho thought looked like a .380 caliber pistol. Appellant threatened Camacho and told him to
stay in his house. Camacho soon became curious and looked out again. Appellant fired a shot toward
Camacho. The projectile penetrated a wall and shattered when it struck a dead bolt lock. A fragment of
the projectile or debris loosened by the projectile grazed Camacho's arm causing it to sting. Camacho
heard other shots fired. After making a 911 call, Camacho saw two men, neither of whom he could identify
because of the distance, running toward the intersection of Eighth and Blake Streets.

 Several police officers working undercover on another case were about a quarter of a mile
away. When they heard the shots fired, they drove to the intersection of Eighth and Blake Streets. Officers
Holloway and Lorenz saw several people gathered in the street on Eighth Street. Officers Garner and
Klemens in plainclothes and in an unmarked police car were closer to the people gathered in the street than
were Holloway and Lorenz. Shots were fired from the place where the people were assembled in the
street. One shot struck the taillight of the car used by officers Garner and Klemens. After the shots were
fired, two men fled across some yards. Holloway and Lorenz followed and captured both men. One of
the men was appellant; there were .380 caliber cartridges in his pocket, and a .380 caliber pistol was found
where appellant had jumped over a fence. Andre Nettles was the other man; a .22 caliber pistol was found
near him, and he had .22 caliber cartridges in his possession. Spent cartridge casings for both the .380
and .22 caliber weapons were found in the street where the shots had been fired that struck the taillight of
the officer's car. Several .380 caliber spent cartridges and one live round were found in the used car lot. 
The State conceded that it was Nettles who fired the shot that struck the police car's taillight.

 A firearm and toolmark examiner for the Texas Department of Public Safety testified that
in his opinion the .380 caliber spent cartridge found in the street and those found in the used car lot had
been fired in the .380 caliber pistol that was found near appellant when he was arrested.

 Appellant raised an alibi defense by his own testimony and that of other witnesses. 
Appellant contended that Camacho had misidentified him as the man who fired the shot into Camacho's
house.

 "[E]vidence of extraneous offenses that are indivisibly connected to the charged offense
and necessary to the State's case in proving the charged offense may be admissible as relevant evidence
to explain the context of the offense for which appellant is on trial." Lockhart v. State, 847 S.W.2d 568,
571 (Tex. Crim. App. 1992). Without regard to whether this point of error was preserved for review by
a motion in limine or whether the shooting of the taillight was an extraneous offense, there was circumstantial
evidence to show appellant, before he fled, fired a shot while he was standing on Eighth Street. The
circumstantial evidence was admissible to rebut appellant's defense of alibi and that Camacho had
misidentified him. See Ivey v. State, 212 S.W.2d 146, 148 (Tex. Crim. App. 1948). Appellant's specific
complaint that the State failed to show beyond a reasonable doubt that appellant committed what he alleges
was an extraneous offense is without merit. Both direct and circumstantial evidence show appellant
possessed a .380 caliber pistol. The spent cartridge found in the street had been fired by that pistol. 
Appellant's second point of error is overruled.

 In his third point of error, appellant contends that "the prosecutor engaged in misconduct
by his method of cross-examining defense witnesses." Appellant cites several instances in which the trial
court either overruled his objections or denied his motions for mistrial. The cross-examination of Tahirah
Hill is illustrative of appellant's complaints concerning the prosecutor's cross-examination of defense
witnesses. The prosecutor asked Hill "Q. And would you agree that the one you say left the party, instead
of Lincoln, when we know a man was shot over on Blake Street, you say that was Andre Nettles. But you
will agree that he [Nettles] looked totally different than Lincoln Belle on the night this happened." 
Appellant's trial objections were that the prosecutor was putting words in the witness's mouth and that the
prosecutor misstated the evidence. The trial court overruled both objections. Appellant, on appeal, does
not complain of the trial court's ruling. Instead, appellant has changed his complaint on appeal and
contends that the cross-examination of Hill and other cited instances show prosecutional misconduct that
deprived him of due process and a fair trial. As a prerequisite to presenting a complaint for appellate
review, the record must show that the complaint was made in the trial court by a timely request, objection,
or motion that states with sufficient specificity the grounds for the ruling sought by the complaining party. 
See Tex. R. App. P. 33.1. There were no timely trial objections that appellant was being deprived of a fair
trial and due process by the prosecutor's method of cross-examination of defense witnesses. Therefore,
the issue presented on appeal was not properly preserved in the trial court for appellate review. An
objection stating one legal basis may not be used to support a different legal theory on appeal. See Bell
v. State, 938 S.W.2d 35, 54 (Tex. Crim. App. 1996); Rezac v. State, 782 S.W.2d 869, 970 (Tex. Crim.
App. 1990); Fleming v. State, 819 S.W.2d 237, 246 (Tex. App.--Austin 1991, pet. ref'd). Appellant's
third point of error is overruled. 

 In his fourth point of error, appellant asserts that he "was denied a fair trial by the
prosecutor's improper arguments during both the guilt or innocence phase and the punishment phase of
trial." The Court of Criminal Appeals has recognized the permissible areas of jury argument to be (1)
summations of evidence, (2) reasonable deductions from the evidence, (3) responses to the defendant's
arguments, and (4) a plea for law enforcement. See Lagrone v. State, 942 S.W.2d 602, 619 (Tex. Crim.
App. 1997); Gaddis v. State, 753 S.W.2d 396, 397 (Tex. Crim. App. 1988); Alejandro v. State, 493
S.W.2d 230, 231 (Tex. Crim. App. 1973).

 In his jury argument at the guilt-innocense phase of trial, appellant's counsel argued:


Basically, every witness that we presented for the defense and every witness that the State
presented, with the exception of one, cannot put Lincoln Belle at 407-B Blake Street. Our
witnesses say he was not there; he was on Eighth Street. Their witnesses can't say that he
was at Blake Street. The only witness who has said that he was there is a man whose
identification and testimony rests on four seconds of time.




* * * * *



I submit to you that Mr. Camacho was probably more focused on that gun than he was on
the individual who was holding it. And that's natural. I am sure I would be the same way. 
I am sure when that gun -- And we don't know whether it was this gun or some other gun,
but when a gun was pointed at him, I am sure that barrel looked like it was about that big
around (indicating). I know if anybody ever pointed one at me, that would be the
impression I would get. And my concentration, my attention would be zeroed in on that
pistol, or that rifle or that shotgun, or whatever it was, wondering if they were going to
shoot me. We are not saying that Mr. Camacho is purposely lying. We are just saying
that based on the circumstances, he was not capable of making a good identification and
he is mistaken. The person who shot at him or who pointed the gun at him may have
resembled Lincoln Belle, but the evidence clearly shows that Lincoln Belle was not there
and it could not have been him.


* * * * *



But I am equally convinced that Lincoln Belle did not do it. I don't know whether it was
Nettles.


 After defense counsel's argument, the prosecutor argued:


If you were in a position where yourself or your loved one were looking down the barrel
of one of those -- you know, looking at the barrel and you got a good look at him, you
would expect people to believe you.


[DEFENSE COUNSEL]: Your Honor, I am going to object to that. He's asking the jury
to place themselves in the position of the complaining witness, and I believe that's
improper.


THE COURT: Sustain the objection. The jury will disregard the argument.


[DEFENSE COUNSEL]: Your Honor, we would request a mistrial.


THE COURT: Motion is denied.


 Appellant insists that it was improper for the prosecutor to ask members of the jury to place
themselves in the shoes of the victim. The prosecutor's argument was in response to defense's argument. 
Furthermore, appellant did not state a legal reason as the basis for his objection. The court promptly
sustained the defense objection and admonished the jury to disregard the prosecutor's argument. If error,
it was cured by the trial court's ruling and admonishment. See Williams v. State, 732 S.W.2d 762, 765
(Tex. App.--Beaumont 1987, no pet.); Chandler v. State, 689 S.W.2d 332, 335 (Tex. App.--Fort
Worth 1985, no pet.).


 At the punishment phase of trial, appellant objected three times to the prosecutor's
argument. Appellant contends on appeal that these arguments deprived him of a fair trial. Appellant's first
complaint concerns the prosecutor's argument that probation would not be a proper punishment for
appellant. The prosecutor argued "probation is not going to stop that. That's not, in the eyes of many
victims, punishment at all. I am sure Mr. Camacho would not want to see Mr. Belle on the street
tomorrow." Defendant objected, "Your Honor, I will object to that not being in evidence. He is arguing
outside of the evidence and the charge." The trial court overruled the objection. "Counsel is generally
afforded wide latitude in drawing inferences from the record, as long as such inference are reasonable and
offered in good faith." Cantu v. State, 842 S.W.2d 667, 690 (Tex. Crim. App. 1992). "[C]ounsel may
in argument draw from facts in evidence all inferences that are reasonable, fair and legitimate." Carter v.
State, 614 S.W.2d 821, 823 (Tex. Crim. App. 1981); see Scott v. State, 867 S.W.2d 148, 152 (Tex.
App.--Austin 1993, no pet.). The trial court did not err in overruling appellant's objection.

 The prosecutor also argued that the purposes of the criminal law were punishment,
deterrence, and rehabilitation. Concerning rehabilitation he argued: "The third purpose of our criminal law
is to rehabilitate. And that's a fine objective, because a lot of people are subject to rehabilitation. He may
be one of them. I don't know. But I know one thing, the first step in any rehabilitation is admit that you
have done something wrong . . . ." Appellant's counsel objected. "Your Honor, I am going to object to
that. That is an attempt by the State to deny him his constitutional right to presumption of innocence, his
right to plead not guilty, and his right to a trial by jury, which is guaranteed to him by the U.S. Constitution
and the Constitution of the State of Texas." The trial court overruled the objection. Appellant pled not
guilty, testified before the jury, maintained his innocence, and after the jury found him guilty, testified at the
punishment phase and continued to maintain his innocence. Defense counsel argued for leniency, and that
appellant had a right to continue to insist on his innocence. The prosecutor's argument that rehabilitation
requires an acknowledgment of guilt is common sense. The argument was a proper response to appellant's
argument. This argument did not impinge upon appellant's constitutional rights. Appellant was afforded
those rights. The trial court did not err in overruling appellant's objection.

 Appellant also complains that the prosecutor asked "the jury to render their verdict based
on community sentiment." The prosecutor argued:


But one of the other things that's real apparent to me -- and I will repeat it again -- is why
should he be treated any different than Mr. Nettles? I mean I didn't ask Mr. Nettles how
much penitentiary time he got. I didn't think that was proper to try to influence your
verdict. But his lawyer, [appellant's] brought that out, and made it apparent to you so you
would know that he only got four years. He evidently wanted that floor -- that floor place
there for a purpose, because he brought that out. And I would ask you -- He deserves
at least what Mr. Nettles got, because you hear all the people talking in the community
about well why would this man that did that get this much time and another one get
something totally different, or something apologetic like probation. These men should be
treated --


[DEFENSE COUNSEL]: Your Honor, I object to this line of questioning. He is trying to
make this jury render their verdict based on community sentiment.


THE COURT: Objection is overruled.


 Appellant mischaracterizes the prosecutor's argument. The prosecutor did not call upon
the jury to render a verdict based on community sentiment. The jury had already found appellant guilty. 
The jury in the punishment phase of trial was deciding appellant's punishment. The prosecutor was arguing
that the community was concerned about disparity of punishment in criminal cases -- a legitimate concern. 
It was the appellant who introduced evidence of Nettles's punishment. The prosecutor's argument in these
circumstances was a plea for proper law enforcement. The trial court did not err in overruling appellant's
objection. The prosecutor's argument did not deny appellant of a fair trial. Appellant's fourth point of
error is overruled.

 In his fifth point of error, appellant urges that he "was denied a fair trial by the prosecutor's
references to the previous trial . . . during his examination of witnesses." Appellant's complaint concerns
the prosecutor's cross-examination of appellant and direct examination of appellant's stepfather. Cross-examining appellant, the prosecutor asked:


Q: Now during the trial you were stating, and told this jury that you were left-handed; but
you are ambidextrous, and you admit that, don't you?


A: No. I am left-handed.


Q. Where is your stepfather that was here during the trial?


UNIDENTIFIED PERSON: Right here.


Q. Okay. He testified at the last time --


[DEFENSE COUNSEL]: Your Honor, I object to any testimony concerning what
someone testified to in another hearing.


THE COURT: Sustain the objection.



 After sustaining appellant's objection, the trial court admonished the jury to "disregard any
implication as to what the answer to that question might have been. The question is stricken." The trial
court overruled appellant's motion for mistrial. Appellant continued to deny he was ambidextrous. In
rebuttal, the prosecutor called appellant's stepfather to testify and asked him:

Q. Have you testified under oath in connection with this proceeding in front of another
jury --


[DEFENSE COUNSEL]: Your Honor, I am going to object to what was testified to at
any other proceeding. That's improper.


THE COURT: I will allow it. Overruled.


Q. Did you testify about two weeks ago in this same trial in front of a different jury and
tell that jury under oath that your stepson, Lincoln Belle, was ambidextrous?



 "Granting a motion for new trial restores the case to its position before the former trial . .
. . The prior conviction must not be regarded as a presumption of guilt, nor may it be alluded to in the
presence of the jury that hears the case on retrial." Tex. R. App. P. 21.9. Appellant's first trial resulted
in a mistrial after the jury was unable to reach a verdict. Appellant was not convicted in his first trial, and
the prosecutor did not allude to a prior conviction. Nevertheless, appellant argues that it "was improper
for the prosecuting attorney to inform the jury that appellant had been previously tried on the same charge
by another jury." The former statute and now Rule 21.9 disapprove of the use of the "prior conviction"
as a presumption of guilt. Also the rule disapproves of a prosecutor alluding to the "prior conviction" in
the presence of the jury on retrial. See Wyatt v. State, 124 S.W. 929, 930 (Tex. Crim. App. 1910) which
is cited by appellant. In Wyatt, the prosecutor asked the defendant, "Have you not been convicted and
given ten years in this case?" In another case, reversal of a conviction resulted because a prosecutor in
cross-examination of a witness, who had not testified in a prior trial, asked her if she had not been present
at the prior trial when the defendant's punishment had been assessed at imprisonment for 100 years. See
Butler v. State, 147 S.W.2d 1087, 1088 (Tex. Crim. App. 1941). The prosecutors in Wyatt and Butler
clearly violated the former statute. However, it has been held that it is sometimes necessary and proper
to refer to a former trial. For example, it may be necessary to refer to a prior trial to impeach a witness
by a prior inconsistent statement made during the prior trial. Also, it may be necessary and proper to refer
to a prior trial when prior reported testimony may be admissible on the second trial because a witness who
testified at the first trial has died or is otherwise unavailable at the second trial. See Henderson v. State,
283 S.W. 497, 499-504 (Tex. Crim. App. 1926); Grimes v. State, 141 S.W. 261, 263 (Tex. Crim. App.
1911); Tollett v. State, 60 S.W. 964, 964-65 (Tex. Crim. App. 1901). "The statute in question never
intended to cut off all rules of evidence." Tollett, 60 S.W. at 965. The statute referred to in Tollett was
substantially the same as Rule 21.9.

 The prosecutor did not refer to a former conviction or the result of the prior trial, and did
not by reference to the former trial employ "a presumption of [appellant's] guilt." Any reference to the
former trial, made by the prosecutor, in the circumstances of this case did not deny appellant a fair trial. 
Appellant's fifth point of error is overruled.





 The trial court's judgment is affirmed.



 

 Carl E. F. Dally, Justice

Before Justices Powers, Kidd and Dally*

Affirmed

Filed: August 31, 1998

Do Not Publish





































* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. See Tex.
Gov't Code Ann. § 74.003(b) (West 1988).

 



victed in his first trial, and
the prosecutor did not allude to a prior conviction. Nevertheless, appellant argues that it "was improper
for the prosecuting attorney to inform the jury that appellant had been previously tried on the same charge
by another jury." The former statute and now Rule 21.9 disapprove of the use of the "prior conviction"
as a presumption of guilt. Also the rule disapproves of a prosecutor alluding to the "prior conviction" in
the presence of the jury on retrial. See Wyatt v. State, 124 S.W. 929, 930 (Tex. Crim. App. 1910) which
is cited by appellant. In Wyatt, the prosecutor asked the defendant, "Have you not been convicted and
given ten years in this case?" In another case, reversal of a conviction resulted because a prosecutor in
cross-examination of a witness, who had not testified in a prior trial, asked her if she had not been present
at the prior trial when the defendant's punishment had been assessed at imprisonment for 100 years. See
Butler v. State, 147 S.W.2d 1087, 1088 (Tex. Crim. App. 1941). The prosecutors in Wyatt and Butler
clearly violated the former statute. However, it has been held that it is sometimes necessary and proper
to refer to a former trial. For example, it may be necessary to refer to a prior trial to impeach a witness
by a prior inconsistent statement made during the prior trial. Also, it may be necessary and proper to refer
to a prior trial when prior reported testimony may be admissible on the second trial because a witness who
testified at the first trial has died or is otherwise unavailable at the second trial. See Henderson v. State,
283 S.W. 497, 499-504 (Tex. Crim. App. 1926); Grimes v. State, 141 S.W. 261, 263 (Tex. Crim. App.
1911); Tollett v. State, 60 S.W. 964, 964-65 (Tex. Crim. App. 1901). "The statute in question never
intended to cut off all rules of evidence." Tollett, 60 S.W. at 965. The statute referred to in Tollett was
substantially the same as Rule 21.9.

 The prosecutor did not refer to a former conviction or the result of the prior trial, and did
not by reference to the former trial employ "a presumption of [appellant's] guilt." Any reference to the
former trial, made by the prosecutor, in the circumstances of this case did not deny appellant a fair trial. 
Appellant's fifth po